```
        UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF WEST VIRGINIA

                    BECKLEY
```

**ANDRES JAVIER SANCHEZ,**

  **Plaintiff,**

**v.**          **Case No. 5:07-cv-00355**

**DOMINIC McLAIN and**
**ROGER EDWARDS,**

  **Defendants.**

## O R D E R

Pending before the Court are the plaintiff's Motion to Compel Defendants to Comply with Discovery and to Seek Sanctions (ECF No. 107) and his Supplement to that Motion, with Entry of Default Judgment Requested (ECF No. 115). The defendants responded to the Motion to Compel (ECF No. 114), but not to the Supplement. The plaintiff filed a reply (ECF No. 117).

### Procedural Background

The presiding District Judge, the Hon. Thomas E. Johnston, dismissed defendants Felts, Thompson, White and Watts and defined the plaintiff's claims against the remaining defendants (McLain and Edwards) as follows:

> To ascertain the validity of Plaintiff's claims, the Court ordered the BOP to produce Plaintiff's medical records from FCI Three Rivers. Based on those records, there may be at least an inference raised that the medical providers at FCI Beckley mismanaged Plaintiff's case. The evidence clearly shows that Plaintiff's knee problems began while he was at FCI Three Rivers. For

>example, the medical report from July 28, 2005, indicated that there was an MRI awaiting and requested that Plaintiff be changed to Care Level 2. Further, the transfer order filed on December 21, 2005, indicated that the transfer was based on an increase in Plaintiff's medical care level. However, Plaintiff did not receive an MRI until September 11, 2007, nearly two years after his transfer, despite numerous complaints and medical screenings. Thus, it could possibly be inferred that despite Plaintiff's being transferred for the sole purpose of increased care for his knee, he was denied proper care by the medical staff at FCI Beckley for nearly two years.
>
>Even if this evidence were to give rise to an inference of mismanaged medical care, whether Plaintiff has met his heavy burden in showing that Defendants McLain and Edwards were deliberately indifferent to his serious medical need is another issue. This issue, when considered in light of the recent submission of Plaintiff's records from FCI Three Rivers, requires further briefing. Accordingly, the Court will take this objection [to the Proposed Findings and Recommendation filed August 5, 2008, ECF No. 52] under advisement until such briefing has been completed.

(Mem. Op. and Order, July 8, 2009, ECF No. 77, at 10-11.)

The remaining defendants filed their brief and included declarations from Dr. Edwards, Dr. McLain and Dr. Richard Ramirez, the Mid-Atlantic Regional Medical Director for the BOP (ECF No. 83 and attachments 1-3). The plaintiff requested additional time to engage in discovery to refute the statements in the declarations, which was granted. (Order entered August 17, 2010, ECF No. 89.) The Order included a direction to the defendants to "respond to Plaintiff's proffered requests for discovery and interrogatories" and to file their responses under seal, with a copy of the records to the plaintiff. Id. at 2. The plaintiff was also authorized to

serve a subpoena on Inter Qual.  Id.

The defendants filed their responses under seal (ECF Nos. 90 and 91), and the Clerk provided copies to the plaintiff (ECF No. 92).  The plaintiff filed motions for summary judgment (ECF Nos. 97, 100, 101) and the defendants renewed their motion for summary judgment (ECF No. 99).

### Motion to Compel (ECF No. 107)

The plaintiff's motion to compel argues that the defendants "gave incomplete and evasive answers to interrogatories numbers 2, 3, and 4."  (ECF No. 107, at 4.)  He asserts that the "defendants have also been deficient in their requests for documents numbers 2, 3, and 4."  Id.  In a letter dated January 7, 2011, to AUSA Krivonyak, the plaintiff supplemented and clarified his interrogatories 2, 3 and 4, and requests 2, 3 and 4.  (ECF No. 107-3, Ex. B, at 2.)  On February 8, 2011, the defendants filed under seal supplemental answers to the interrogatories (ECF No. 109) and responses to the requests for documents (ECF No. 111).

The interrogatories, as supplemented and clarified and the defendants' answers, as supplemented, are as follows:

> Interrogatory No. 2 [original]: Identify and explain in detail how the Bureau of Prisons uses the Inter Qual software.
>
> Response [original]: Objection.  Defendants object to this interrogatory as not reasonably calculated to lead to the discovery of relevant or admissible evidence.  Specifically Defendants state the requested information is not relevant to the claims or defenses of the parties because the InterQual software system was not used by the

3

Federal Bureau of Prisons (hereinafter "BOP") during any time period relevant to this action. Defendants mentioned InterQual in passing in a footnote in Defendants' Response to the July 8, 2009 Memorandum Opinion and Order [ECF No. 83] in order to show that even under the InterQual system, Plaintiff would not have been approved for an MRI at the time of Dr. Edwards' evaluation of Plaintiff's knee.

Subject to and without waiving this objection Defendants state, the McKesson InterQual is the same community evidence based software used by private insurance companies to preauthorize procedures. InterQual includes care planning criteria which are clinically based, patient-specific sets of information designed to support decisions about the appropriateness of requested medical interventions (specifically with regard to procedures, imaging, and speciality referrals).

The BOP utilizes the InterQual software for Regional Review and pre-approval of elective medical care. Upon submission of a consultation or other medical intervention request by an institution provder, the request is initially processed through the local Clinical Director and/or Utilization Review Committee. If approved at the local level, the request is forwarded for Regional Review. Regional review personnel conduct a primary InterQual review by applying information from both the request and the Bureau Electronic Medical Record to the InterQual inquiry prompts. [FN1: Notably, the BOP's Electronic Medical Record also was not in use during the time period relevant to this action.] If InterQual criteria are met, the request is approved. If InterQual criteria are not met, the primary InterQual review is forwarded to the respective Regional Medical Director for secondary review. The Regional Medical Director performs the secondary InterQual review and makes a final determination whether to approve the request.

Interrogatory No. 2 [supplemented]: Please identify the dates the InterQual criteria was used by the Bureau of Prisons, and, explain what a "secondary Interqual review" is.

Response [supplemented]: Objection. The supplemental interrogatory is overly broad, unduly burdensome, vague, and may seek protected trade secrets of the publishers of

InterQual. Defendants object to this new interrogatory as a violation of the Court's discovery order entered August 17, 2010, in that it asks for different and additional information after the close of discovery. Without waiving these objections and those previously raised in response to the 10/26/2009 interrogatory, Defendants state that this interrogatory was thoroughly answered and explained in the response filed on 09/16/2010. Again, specific dates are not relevant because InterQual was not utilized in Plaintiff's case.

Interrogatory No. 3 [original]: Identify and explain in detail the standard of care for a torn medial meniscus.

Response [original]: Objection. Defendants object to this interrogatory which calls for a medical opinion and which is not reasonably calculated to lead to the discovery of relevant or admissible evidence. The only remaining issue in this case is whether Dr. McLain and Dr. Edwards were deliberately indifferent to Plaintiff's alleged serious medical condition. Plaintiff's inquiry regarding an appropriate standard of care while relevant to a medical negligence claim is not relevant to a deliberate indifference claim. As Plaintiff has no pending medical negligence claim, this inquiry is misplaced.

Interrogatory No. 3 [supplemented]: This interrogatory is within the scope of Rules 26(b)(1) and 33. I am asking Defendants for their contention on what their standard of care is to treat a torn medial meniscus. This is material for several reasons, most notably to show the medical care by Dr. McLain and Dr. Edwards was so cursory that it amounted to no care at all, which is inferentially related to the defendants' state of mind.

Response [supplemented]: Defendants[] state that this interrogatory was adequately answered on September 16, 2010, as reiterated above.

Interrogatory No. 4 [original]: Identify and explain how untreated pain that affects a daily life function is not a serious medical condition.

Response [original]: Objection. Defendants object to this interrogatory which calls for a legal conclusion and is not reasonably calculated to lead to the discovery of relevant or admissible evidence. Subject to and without

5

waiving the objection, Defendants state they have specifically elaborated upon the contention that Plaintiff's left knee condition was not, under a deliberate indifference analysis, a serious medical condition in their Motion for Summary Judgment. See Docket No. 83 at pp. 5-7.

Interrogatory No. 4 [supplemented]: This interrogatory is asking Defendants to explain their contention that untreated pain that affects a daily life function is not a serious medical condition. Defendant[s] answered the interrogatory by referring to "Plaintiff's left knee condition," which was not the question.

Response [supplemented]: Defendants object to this new interrogatory as a violation of the Court's discovery order entered August 17, 2010, in that it asks for different and additional information after the close of discovery. Defendant state this [sic] that this interrogatory was adequately answered on September 16, 2010, as reiterated above.

Request No. 2 [original]: All documents pertaining to Plaintiff from InterQual or in the custody or control of Defendants.

Response [original]: Objection. Defendants object to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence. Subject to and without waiving the objections, Defendants state they have no documents responsive to this request.

Request No. 2 [supplemented]: This request would include any and all training documents that cover the use of, or scope of, the InterQual criteria by BOP personnel, including Dr. McLain and Dr. Edwards.

Response [supplemented]: Objection. Defendants object to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence. Defendants further object to this new request as a violation of the Court's discovery order entered August 17, 2010, in that the request seeks production of different and additional documents after the close of discovery. Specifically, Defendants state the InterQual software system was not used by the Federal Bureau of Prisons (hereinafter "BOP")

6

during any time period relevant to this action.

<u>Request No. 3 [original]</u>: All documents pertaining to Plaintiff that were prepared by, or reviewed, or otherwise, in the custody of [sic; or] control of Richard Ramirez, MD, Mid-Atlantic Regional Medical Director.

<u>Response [original]</u>: Defendants state Dr. Ramirez had available to him for review all the medical documents which have been provided previously to Plaintiff in this litigation through Defendants' other filings. To the extent Plaintiff requires a second set of copies of those documents Defendant will provide them upon request.

<u>Request No. 3 [supplemented]</u>: Please consider this letter a formal request for the documents demanded in RFP #3.

<u>Response [supplemented]</u>: See Attachment 1 - Second copy of medical documents provided to Plaintiff which were available to Richard Ramirez, M.D., Mid-Atlantic Medical Director.

<u>Request No. 4 [original]</u>: All inmate or staff recreation post Rosters for 7/15/06, 07/17/06, 7/22/06, 07/27/06, 7/29/06, 8/2/06, and 9/9/06 at FCI-Beckley.

<u>Response [original]</u>: Objection. Defendants object to this request as Plaintiff did not arrive at FCI Beckley until January 2006.

<u>Request No. 4 [supplemented]</u>: You are correct about the fact that I did not arrive at FCI Beckley until January 2006. The year in the requested dates was a scrivenor's [sic] error, which should have been a "6" instead of a "5", so that all of the requested dates were during 2006.

<u>Response [supplemented]</u>: Defendants further object to this new request as a violation of the Court's discovery order entered August 17, 2010, in that the request seeks production of different and additional documents after the close of discovery. Defendants state there are no responsive documents. However, Defendants also state the RDS attendance sheet for Team 3 Soccer and Team 3 Soccer sheet were provided on September 16, 2010, in response to Request No. 8. See Attachment 2.

The plaintiff argues that the Court should award sanctions

against the defendants because they failed to comply with the Court's order and impeded his ability to conduct discovery. (ECF No. 107, at 5.) He asserts that it is now impossible to provide his medical records to an expert and complete a dispositive motion by the Court's deadline of February 5, 2011. Id. He asks for entry of an order "directing all Federal Bureau of Prisons employees to provide Sanchez reasonable access to a photocopier during the pendency of this action," requiring the defendants to amend their responses, and enlarging the discovery period by 60 days. Id.

The response filed by the defendants recites the discovery history and contends that the plaintiff's requests fall into four categories: "(1) documents that do not exist, (2) his error in drafting the request, (3) Plaintiff's need for duplicate copies of documents already disclosed, and (4) lack of any relevance to the pending claims." (ECF No. 114, at 8.) They characterize the plaintiff's motion as frivolous. Id.

The plaintiff's reply repeats his assertions in support of his discovery requests and accuses the defendants of vague, incomplete and evasive answers. (ECF No. 117, at 1.)

The undersigned will address each discovery request in turn.

Interrogatory No. 2

The defendants answered this interrogatory fully and fairly, despite the irrelevance of information relating to InterQual

software, which was <u>not</u> used when the plaintiff sought treatment at FCI Beckley.

<u>Interrogatory No. 3</u>

The standard of care for a torn medial meniscus relates to a cause of action for negligence. The plaintiff's only remaining claim is for deliberate indifference to a serious medical need, which is substantively different from negligence. The interrogatory is irrelevant.

<u>Interrogatory No. 4</u>

An unfocused question concerning untreated pain and its effect on daily life is not relevant to whether the plaintiff presented a serious medical need to the defendants. The defendants properly objected to the interrogatory. The plaintiff will have the opportunity to present his arguments that he experienced a serious medical need to the presiding District Judge.

<u>Request No. 2</u>

Relying on the defendants' assertion that the InterQual software was not in use at the time of the plaintiff's interaction with Doctors McLain and Edwards, the undersigned finds that documents, particularly training materials, relating to InterQual are irrelevant.

<u>Request No. 3</u>

This request has been fully satisfied.

software, which was <u>not</u> used when the plaintiff sought treatment at FCI Beckley.

<u>Interrogatory No. 3</u>

The standard of care for a torn medial meniscus relates to a cause of action for negligence. The plaintiff's only remaining claim is for deliberate indifference to a serious medical need, which is substantively different from negligence. The interrogatory is irrelevant.

<u>Interrogatory No. 4</u>

An unfocused question concerning untreated pain and its effect on daily life is not relevant to whether the plaintiff presented a serious medical need to the defendants. The defendants properly objected to the interrogatory. The plaintiff will have the opportunity to present his arguments that he experienced a serious medical need to the presiding District Judge.

<u>Request No. 2</u>

Relying on the defendants' assertion that the InterQual software was not in use at the time of the plaintiff's interaction with Doctors McLain and Edwards, the undersigned finds that documents, particularly training materials, relating to InterQual are irrelevant.

<u>Request No. 3</u>

This request has been fully satisfied.

Request No. 4

From a review of the documents provided to the plaintiff on September 16, 2010, it appears that this request has been met. Otherwise, the undersigned relies on the defendants' assertion that there are no other responsive documents.

It is hereby **ORDERED** that the plaintiff's motion to compel is denied and the defendants' objections are sustained. The plaintiff's request that the Court impose sanctions is denied. Sanctions cannot be imposed for discovery abuses unless and until there is a failure to comply with a court order. Rule 37(b), Fed. R. Civ. P. The plaintiff has failed to persuade the Court that the defendants or their attorneys have failed to comply with any court order.

### Supplement to Motion to Compel (ECF No. 115)

In this motion, the plaintiff accuses the defendants of (1) willfully preventing the plaintiff from communicating with an expert witness locator firm, thereby obstructing his retaining of an expert witness, (2) failing to produce documents as ordered by this Court, and (3) obstructing his ability to conduct discovery and to prepare a motion for summary judgment. (ECF No. 115, at 1.)

The plaintiff's first contention relates to alleged failures by the mailroom at FCI Fort Worth to deliver mail to the plaintiff, which has interfered with his ability to hire an expert witness. Id. at 2-5. The plaintiff's dispute with BOP employees at FCI Fort

10

Worth must be handled at that institution via the grievance procedure. The only remaining defendants in this action are Doctors McLain and Edwards, who have no control over the Fort Worth mailroom.

The plaintiff's second claim is that the defendants have refused to produce certain documents which, he asserts, were ordered to be produced in the Order entered August 17, 2010 (ECF No. 89). The August 17, 2010 Order did not order that the defendants must produce certain documents. It referred to the plaintiff's request for production of documents found at ECF No. 84, at 35-36, Ex. D, and stated: "Defendants are hereby **ORDERED** to respond to Plaintiff's proffered requests for discovery . . . within thirty (30) days from entry of this order." (ECF No. 89, at 2.) The defendants complied with the Order and responded to the requests at ECF No. 91. The undersigned has addressed the plaintiff's motion to compel with respect to the requests for documents.

The plaintiff's third claim is that the defendants have obstructed his efforts and harassed him. (ECF No. 115, at 6-8.) His allegations relate to his ability to make copies at the institution where he is incarcerated. The remaining defendants have no control over the copying equipment at FCI Fort Worth.

It is hereby **ORDERED** that the plaintiff's Supplement to his motion to compel and his request for imposition of various

11

sanctions are denied. As noted above, the undersigned finds that the defendants have not violated the August 17, 2010 Order.

The Clerk is directed to mail a copy of this Order to Plaintiff and to transmit it to counsel of record.

ENTER: March 7, 2011

                                    *Mary E. Stanley*
                                    Mary E. Stanley
                                    United States Magistrate Judge